UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                                    CASE NO.

      Plaintiff,

vs.

1220 COLLINS AVENUE, LLC., a Foreign Limited Liability Company
D/B/A THE WEBSTER

      Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

      Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, 1220 COLLINS AVENUE, LLC., a Foreign Limited Liability Company d/b/a THE WEBSTER (hereinafter referred to as "THE WEBSTER"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)    This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2)    This action is also brought pursuant to 28 C.F.R. Part 36.

3)    This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4)    Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)    Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, THE WEBSTER, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, THE WEBSTER, is a company that sells men's and women's clothing, bags, shoes, accessories, jewelry, skin care, makeup, fragrance, hair products, body lotions and oils, soap, body wash, home décor and kitchen essentials. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase stripe socks in white and dusty blue.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)     Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)      Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons.  The software that she uses is screen reader software that is readily available commercially.

18)     Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)     Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, jewelry, skin care, makeup, fragrance, hair products, body lotions and oils, soap, body wash, home décor and kitchen essentials through defendant's website, subscribe to Defendant's newsletter, contact a digital stylist, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and join The Webster Elite and gain VIP access for rewards.

20)     Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing socks through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand, subscribe to Defendant's newsletter, contact a digital stylist, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, join The Webster Elite and gain VIP access for rewards, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, jewelry, skin care, makeup, fragrance, hair products, body lotions, home décor, kitchen essentials and other items, through defendant's website, subscribe to Defendant's newsletter, contact a digital stylist, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and join The Webster Elite and gain VIP access for rewards, the website is an extension of, and gateway to, Defendant's physical stores. By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, contact a digital

stylist, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and join The Webster Elite and gain VIP access for rewards the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://thewebster.us/ Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)     The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)     Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)     During the months of May and June, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate herself as to the merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31)     Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32)     Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33)     Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34)     A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, bags, shoes, accessories, jewelry, skin care, makeup, fragrance, hair products, body lotions and oils, soap, body wash, home décor and kitchen essentials, through defendant's website, subscribe to Defendant's newsletter, contact a digital stylist, create an account and register

to track orders, create a wish list, and learn the story behind Defendant's brand, and join The Webster Elite and gain VIP access for rewards.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: The 'Combo Boxes' for selecting a state throughout the site do not read options as user cycles through them ([video](video)). They should work like this [example](example) shown on this [page](page). In instances when the options presented in the dropdown are unfamiliar to the user, not having them read out loud as one cycles through them makes selecting the desired option difficult – one must select each individual option to get it read.

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the product information section, the link for learning more about interest free payments (Klarna) is not fully described in an audible format to the user, rendering the option unavailable ([video](video)).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the checkout process tool tip for phone number is not fully described in an audible format to the user (video).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the checkout process the check box for *Join our SMS list* is not fully described in an audible format to the user, rendering the option unavailable (video).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

38)  Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39)  Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40)  On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41)  Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only

means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://thewebster.us/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

>  Violation: Labels or instructions are not provided when content requires user input.
>
>  Note/Proof: The 'Combo Boxes' for selecting a state throughout the site do not read options as user cycles through them (video). They should work like this example shown

on this page. In instances when the options presented in the dropdown are unfamiliar to the user, not having them read out loud as one cycles through them makes selecting the desired option difficult – one must select each individual option to get it read.

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the product information section, the link for learning more about interest free payments (Klarna) is not fully described in an audible format to the user, rendering the option unavailable (video).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the checkout process tool tip for phone number is not fully described in an audible format to the user (video).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

Violation: Labels or instructions are not provided when content requires user input.

Note/Proof: Within the checkout process the check box for *Join our SMS list* is not fully described in an audible format to the user, rendering the option unavailable (video).

Applicable WCAG 2.1 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.1's *Standard 3.3.2 Labels or Instructions.*

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since she has been denied full access to Defendant's website.

52)     As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.      A declaration that Defendant's website is in violation of the ADA;

B.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


[1]

## COUNT II – TRESPASS

53)     Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

   5.1 Cookies

Cookies are small pieces of information sent by a web server to a web browser, which allows the server to uniquely identify the browser on each page. We use cookies to collect information and store your online preferences.

For example, cookies that are inserted into web pages allow the following actions, depending on the case:

To record the last page visited by the User before entering or just after entering the website;

To record the date, time and duration of the visit;

To record the pages viewed;

To automatically authenticate the User's login without him having to enter his login credentials at each visit;

To identify system information (language, country, operating system, browser etc.).

*We use the following categories of cookies on our Website:*

(a) STRICTLY NECESSARY COOKIES These cookies are essential in order to enable you to move around the website and use its features. Without these cookies, services you have asked for such as remembering your login details or shopping basket items cannot be provided.

(b) PERFORMANCE COOKIES These cookies collect anonymous information on how you use our Website. For example, we use Google Analytics cookies to help us understand

how customers arrive at our site, browse or use our site and highlight areas where we can improve areas such as navigation, shopping experience and marketing campaigns. The data stored by these cookies does not show personal details from which your individual identity can be established. You may opt into these cookies using your browser settings but it may affect the performance of our Website.

(c) FUNCTIONALITY COOKIES These cookies remember choices you make such as the country you visit our website from, language and search parameters such as size, colour or product line. These can then be used to provide you with an experience more appropriate to your selections and to make the visits more tailored and pleasant. The information these cookies collect may be anonymized and they cannot track your browsing activity on other websites. You may opt into these cookies using your browser settings but it may affect the functionality of our Website.

(d) TARGETING COOKIES OR ADVERTISING COOKIES These cookies collect information about your browsing habits in order to make advertising more relevant to you and your interests. They are also used to limit the number of times you see an advert as well as help measure the effectiveness of an advertising campaign. The cookies are usually placed by third party advertising networks. They remember the websites you visit and that information is shared with other parties such as advertisers. For example, we use third party companies to provide you with more personalised adverts when visiting other websites. You may opt-in to these cookies using your browser settings.

5.2 How to prevent cookies from being installed?

If you want to delete any cookies that are already on your computer, you can configure your Web browser:

– Google Chrome: Settings → Show advanced settings → Content settings → Cookies / All cookies and site data → Click on Remove All to remove the cookies.

– Firefox: Tools → Options → Privacy → Cookies → Show Cookies → Remove All Cookies

– Opera: Tools → Preferences → "Advanced" tab → "Cookies" heading → Click on "Manage cookies" → Delete the Cookies one by one

– Internet Explorer: Tools → Settings → Options then under History, click on Select, select the Cookies checkbox → Delete

– Safari: Open Safari → Click on Safari → Click on Reset Safari → Check the Empty the cache checkbox → Check the Remove all cookies checkbox → Click on the Reset button at the bottom right.

Information on deleting or controlling cookies is available at www.AboutCookies.org.

Please note that by deleting our cookies or disabling future cookies you may not be able to access certain areas or features of our Website.

For other third party cookies relating to behavioural advertising, please go to www.aboutads.info

59) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### Request for Jury Trial

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434